UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:16-cv-00020-RLV

| | |
|---|---|
| **WARREN KEITH HARTSOG** ) | |
| ) | |
| ) | ORDER |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| **NANCY BERRYHILL,** ) | |
| **Acting Commissioner of Social Security** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the court on the parties' opposing Motions for Summary Judgment (#8 and #11). The matter is ripe for review. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I. Administrative History

Plaintiff applied for disability and disability insurance benefits in November 2012, alleging that he became disabled on September 15, 2009. (Tr. 10). Her claim was denied at the initial and reconsideration levels of review. (Tr. 10). Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before Theodore W. Grippo, an ALJ, on August 14, 2014, at which plaintiff had an attorney representative present. (Tr. 26). In a November 26, 2014 written decision, the ALJ denied the plaintiff's claim. (Tr. 16-27). Plaintiff requested review of the ALJ's decision. (Tr. 10-12). The request for review was denied by the Appeals Council on December 1, 2015 (Tr. 1), rendering the ALJ's decision the final decision of the

Commissioner. See 20 C.F.R. § 404.981. Plaintiff has exhausted her available administrative remedies and the case is now ripe for judicial review under Section 205(g) of the Social Security Act. See 42 U.S.C. § 405(g).

## II. Factual Background

The ALJ's findings of fact are adopted and incorporated herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

IV. **Substantial Evidence**

  A. **Introduction**

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The court finds that the ALJ's decision in large part was supported by substantial evidence. Nonetheless, the court is "left to guess" in part and must refrain from re-weighing evidence here.

  B. **Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title XVI pursuant to the following five-step analysis:

  a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

  b. An individual who does not have a "severe impairment" will not be found to be disabled;

  c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

    C.    **The Administrative Decision**

At step one, the ALJ found that the plaintiff had engaged in substantial gainful activity during the months of January to March in 2011. (Tr. 12).[1] The ALJ further ntoed that there had been continuous 12-month periods that the claimant did not engage in substantial gainful activity. (Tr. 12). At step two, the ALJ found that the plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD), degenerative disc disease, and "tendonitis of the left elbow."[2] (Tr. 13). At step three, the ALJ determined that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15).

---

[1] Plaintiff notes that the period in question was January 3 to March 3, which would be two months. (#8-1) at 6, citing (Tr. 36). The ALJ reported counting the months themselves, January, February, and March, which would be three months in total. (Tr. 12). Nevertheless, it is clear that the plaintiff was employed in substantial gainful activity during some part of these months.

[2] The Commissioner concedes that the "ALJ did seem to have the 'severe' impairments mixed up in his step two header, mentioning tendonitis of the left elbow…elbow pain was not part of Mr. Hartsog's complaints for disability and there is no evidence of such pain." (#12) at 8.

The ALJ concluded that the plaintiff had the residual functional capacity (RFC) to perform medium work, with several limitations. (Tr. 15). The RFC's limitations included only occasionally climbing ladders, ropes, and scaffolds, and frequently climbing ramps and stairs. Id. The ALJ further limited the plaintiff's RFC to frequently balancing, stooping, kneeling, crouching, and crawling. (Tr. 15).

At step four, the ALJ found that plaintiff Hartsog could perform his past relevant work. (Tr. 20). Accordingly, the ALJ determined that the plaintiff had not been under a disability within the meaning of the Social Security Act, 20 C.F.R. 404.1520(g), from the application date September 15, 2009 to the date of the decision. (Tr. 26).

**D.     Discussion**

The court has closely read plaintiff's Memorandum of Law (#8-1) supporting his Motion for Summary Judgment. Plaintiff has made the following assignments of error:

I.      Remand is required in light of plaintiff's subsequent application;

II.    The ALJ's determination that plaintiff could return to his past work was not supported by substantial evidence; and

III.   The ALJ's credibility determination was not supported by substantial evidence.

(#8-1) at 4. Plaintiff's assignments of error will be discussed *seriatim* below.

**1.     New Application**

Plaintiff claims that he filed a subsequent application for disability and was found disabled as of November 14, 2014. (#8-1) at 5. He then asserts that that subsequent application requires remand in the instant case.

Plaintiff argues that "there is no other explanation for the [subsequent disability] approval except that State Agency experts confirmed impairments and opined limitations which they concluded prohibited all substantial, gainful employment, a single day after the ALJ came to the

opposite conclusion." (#8-1) at 5. Plaintiff relies heavily upon Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337 (4th Cir. 2012) for the proposition that remand is required in cases when the Social Security Administration reaches a subsequent, favorable determination of disability.

Bird held that "ALJ must give retrospective consideration to medical evidence created after a claimant's last insured date when such evidence may be 'reflective of a possible earlier and progressive degeneration.'" 699 F.3d at 345. Here, there is speculation, but not evidence. Plaintiff cannot point to how subsequent evidence would or could denote earlier or progressive degeneration. Instead, plaintiff notes that "the medical analyses which gave rise to [the subsequent] favorable determination are not of record in the instant action nor otherwise available to the undersigned." (#8-1) at 5.

Plaintiff's argument is that a subsequent favorable determination, close in time to the original unfavorable determination, must be related to the same underlying conditions and be based on the different medical evidence. Plaintiff's assertions, relying on a reading of Bird, would create a per se rule requiring remand based on a subsequent, favorable disability determination. Given this per se argument, plaintiff has produced no evidence to support this assertion or even identified what impairment extant in this consideration could have progressed to the impairments underlying the later disability determination.

*Inter alia*, the plaintiff contends that the ALJ himself cited a "lack of medical evidence" as justifying his determination of plaintiff's RFC. (#8-1) at 6, citing (Tr. 16). The cited portion of ALJ's RFC determination does not reference a lack of medical evidence, but instead "a lack of supporting medical evidence." (Tr. 16) (emphasis added). The ALJ's RFC determination spans approximately 5 single spaced pages and references record evidence from numerous Exhibits and medical sources.

Ultimately, the role of the court in cases like this is not to re-weigh the evidence or conduct a *de novo* review. Instead, the court asks whether the ALJ based his or her determination upon substantial evidence. Here, the ALJ did so and provided reasoning sufficient to facilitate judicial review. Moreover, <u>Bird</u> does not require remand every time a subsequent ALJ makes a different disability determination. Put another way, the court does not read <u>Bird</u> to create a <u>per se</u> rule requiring remand. Instead, <u>Bird</u> requires at least some identification of the medical evidence and alleged impairment(s) to which the ALJ in the earlier case should provide retrospective consideration.

### 2. Capacity to Perform Past Relevant Work

Plaintiff next contends that the ALJ's determination that the plaintiff could return to his past work was not based on substantial evidence. (#8-1) at 6. Plaintiff's assertions are three-fold. First, plaintiff asserts that the ALJ ignored limitations regarding the plaintiff's hands. (#8-1) at 9. Second, the plaintiff argues that the ALJ ignored the impact of plaintiff's leg swelling and risk of deep vein thrombosis. (#8-1) at 14. Third, plaintiff contends that the ALJ ignored limitations stemming from plaintiff's cataract, affective disorder, and COPD. (#8-1) at 19.

Taking plaintiff's first argument first, plaintiff argues that the ALJ did not adequately discuss and take into account plaintiff's impairments with his hands. The ALJ cited to treatment records from Dr. Li and that the "medical evidence of record does not indicate significant problems with the left hand after surgery." (Tr. 18).

Regarding plaintiff's hands, the ALJ further noted an examination in 2013 where the plaintiff's hand strength was rated 4/5 and his allegation of bilateral hand pain was assessed. (Tr. 18-19). The ALJ also noted an August 2014 visit with a physician who listed "Dupuytren's contracture" within the problem list. (Tr. 19). The ALJ also reviewed a third party function report

that noted that plaintiff, among other things, is able to "wash dishes" and "use a computer." (Tr. 19).

Plaintiff's allegations also stem from his testimony before the ALJ regarding his alleged hand-related impairments. The ALJ noted that the plaintiff's testimony included symptoms of hand pain. (Tr. 16). Even so, the ALJ found that the intensity, persistence, and limiting effect of plaintiff's alleged symptoms, including his hand pain, were "not entirely credible." (Tr. 16). The ALJ's determination and evaluation of the record does not "ignore" plaintiff's limitations with his hands. It is clear from the ALJ's opinion that he reviewed plaintiff's testimony and records from Dr. Li and others regarding plaintiff's hands. It is not for the court to re-weigh the evidence or find that the ALJ should have decided differently. Instead, the court must inquire as to whether the ALJ's reasoning was based on substantial evidence. Here, the court so finds.

Plaintiff's second argument relates to leg swelling and risk of deep vein thrombosis and contends that the ALJ simply "ignored" the impact of these impairments. See (#8-1) at 14. The ALJ's determination includes several points of discussion related to plaintiff's legs. The ALJ reviewed a record from August 2009 detailing plaintiff's varicose veins and venous insufficiency. (Tr. 17). The ALJ reviewed other records that noted paresthesia, pulmonary embolism, and deep vein thrombosis. (Tr. 17-18). The ALJ specifically noted a doctor's opinion that the plaintiff had not complied with anticoagulation therapy and as a result was had likely suffered recurrent deep vein thrombosis. (Tr. 18). Another reviewed medical record assessed chronic leg pain. (Tr. 18). A report from a physical consultative examiner, reviewed by the ALJ, assessed, among other things neuropathy of the left lower extremity. (Tr. 18-19). Further, the ALJ noted a report from a primary care physician listed "history of deep vein thrombosis" included within a problem list. (Tr. 19).

It is clear that the ALJ did not "ignore" alleged impairments related to plaintiff's legs, particularly related to deep vein thrombosis, in crafting his RFC determination. The ALJ cited multiple sections of the record evidence related to plaintiff's legs. Accordingly, remand will be granted on this basis as the ALJ showed his work and based his determination upon substantial evidence.

Plaintiff's third argument relates to the assessment of plaintiff's cataracts, COPD, and affective disorder. Plaintiff contends that these impairments were "wrongfully ignored" by the ALJ. (#8-1) at 19.

At step two, the ALJ discussed the reports of the physical consultative examiner as well as two other doctors regarding plaintiff's cataract. (Tr. 13). Ultimately, the ALJ found, based on the record evidence, that the alleged cataract was not a severe impairment. In his RFC analysis, the ALJ also noted that plaintiff's vision was measured at 20/100 in both eyes in March 2013. (Tr. 19).

Similarly, the ALJ's step two analysis discussed plaintiff's allegations of affective disorder. In making his determination as to plaintiff's alleged affective disorder, ALJ noted the opinion of the State Agency psychological examiner and the ALJ's own review of the paragraph B criteria. (Tr. 13-14). Upon review of the record, the ALJ found that plaintiff's medically determinable mental impairment has resulted in no episodes of decompensation and no more than a "mild" limitation on his activities of daily living, social functioning and concentration, persistence, or pace. (Tr. 14). In the RFC analysis, ALJ also referred to the opinion of the State Agency psychological consultant regarding plaintiff's "nonsevere" mental impairments. (Tr. 19).

The ALJ amply reviewed plaintiff's COPD, which was found to be a severe impairment at step two. (Tr. 13). Among other things, the ALJ reviewed records that noted that the plaintiff

suffered from "chronic tobacco dependence," "chronic cough," and "shortness of breath." (Tr. 18-19). Spirometric testing reviewed by the ALJ noted that the plaintiff had a pre-bronchodilator FEV1 score of 75% of predicted. (Tr. 19).

The plaintiff alleges error in that the ALJ "offered no explanation" as to why plaintiff's COPD "did not translate into at least some environmental limitation in the RFC." (#8-1) at 20. The ALJ noted that the claimant had a wide range of activities of daily living, including that the plaintiff could ride a bike, prepare meals, mow the lawn, water the flowers, shop in stores, and other similar activities. (Tr. 19). The ALJ specifically noted that the activities of daily living supported the RFC finding. (Tr. 19). In doing so, the ALJ provided at least some reason as to why an environmental limitation was not included in the RFC—the ALJ considered such a restriction unnecessary given plaintiff's activities of daily living, among other aspects of the record. Accordingly, remand cannot be granted on this ground.

### 3. Credibility Determination

Plaintiff further asserts that the ALJ's credibility determination was not supported by substantial evidence. (#8-1) at 20. In particular, plaintiff argues that it was improper for the ALJ to use plaintiff's attempt to return to work against him. (#8-1) at 20. Plaintiff also contends that the ALJ erred by holding plaintiff's failure to obtain medical care against him, "cherry-picking" evidence from a questionnaire, and the ALJ's "specious" use of the "perceived delay" in plaintiff's application for benefits and his alleged onset date. (#8-1) at 22-25.

#### a. Unsuccessful work attempt

Plaintiff asserts that it was improper for the ALJ to use plaintiff's return to work from January to March, 2011 against him. (#8-1) at 20. 20 C.F.R. § 404.1574(c) establishes that work which lasts six months or less "will" be considered an "unsuccessful work attempt" if an individual

stops working because of their impairment. 20 C.F.R. § 404.1574(c)(3). SSR 84-25 makes clear that the concept of an "unsuccessful work attempt" is applicable to an initial disability case. Likewise, SSR 05-02 provides that "'earnings from an unsuccessful work attempt [lasting three months or less] will not show that you are able to do substantial gainful activity.'" SSR 05-02 (quoting 404.1574(a)(1), 416.974(a)(1)). Before beginning a work attempt which later proves unsuccessful, there must be a break in the continuity of one's work of at least thirty days. SSR 05-02.

In the instant case, plaintiff returned to work as automobile mechanic for a brief period from January to March, 2011 after not working for almost two years. (Tr. 12, 33-36). Plaintiff alleges that he left this position after this two-month attempt because he was unable to perform it satisfactorily. (Tr. 33-36). Plaintiff specifically cited difficulties with required postures, extensive standing which resulted in swelling, constant pain, inability to get on his knees, and difficulty lifting due to contractures in his hands as reasons for leaving the position. (Tr. 33-36).

In his decision, the ALJ did not discuss plaintiff's reasons for leaving this position after two months, but rather asserted that plaintiff's work as an automobile mechanic constituted substantial gainful activity because plaintiff earned $1,998.63 per month. (Tr. 17). The ALJ considered this two-month attempt as activity which was inconsistent with plaintiff's alleged symptoms and limitations in this case. (Tr. 17). The ALJ noted that this work history reduces plaintiff's credibility. (Tr. 17). However, as SSR 05-2 makes clear, the earnings from a work attempt lasting less than three months or less due to impairments or limitations "'will not show that you are able to do substantial gainful activity.'" SSR 05-02 (quoting 404.1574(c), 416.974(c)).

It is not the province of the court to engage in fact-finding exercises in the first instance or re-weigh conflicting evidence. Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013); see also Cook

v. Heckler, 783 F.2d 1168, 1173 (4th Cir.1986) (holding that without an explanation from the ALJ, "it is simply impossible to tell whether there was substantial evidence to support the determination"). Though evidence appears to suggest that plaintiff's work attempt from January 3 to March 4, 2011 was unsuccessful due to his limitations and impairments, this evidence was undiscussed by the ALJ. Without a discussion by the ALJ whether plaintiff left his position as an automobile mechanic due to his impairments or limitations this court is "left to guess" as to whether plaintiff's work attempt was unsuccessful. Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015). Remand is appropriate for consideration of this evidence in light of SSR 05-02.

### b. Failure to obtain medical care

In his discussion of plaintiff's medical history, the ALJ noted that the plaintiff rejected a physician's recommendation to have surgery on his back in October of 2012. (Tr. 18). The ALJ found that this rejection gave reasons to question plaintiff's credibility. (Tr. 17-19). Plaintiff asserts that the ALJ improperly failed to consider that plaintiff was uninsured from August 28, 2012 until May 2, 2014 in his assessment of plaintiff's credibility. (#8-1) at 22-23. Plaintiff argues that 20 C.F.R. § 404.1529 and SSR 96-7p require an ALJ to consider an individual's insured status when discussing their rejection of treatment. (#8-1) at 23. The court is unable to find such a requirement in the regulations cited by plaintiff. However, In Preston v. Heckler, 769 F.2d 988 (4th Cir. 1985), the Court of Appeals for the Fourth Circuit held:

> Because noncompliance with an effective remedial measure provides an alternative basis for denying benefits, the fact finder may draw upon it to negate at any stage of the sequential analysis an otherwise allowable finding of disability. And because in the general proof scheme, this basis for denying benefits is analogous to that involving the establishment of residual functional capacity to engage in other gainful employment, the burden to establish it by substantial evidence should also be on the Secretary.

Id., at 990. The Social Security Regulations provide

> In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work. . . . If you do not follow the prescribed treatment without a good reason, we will not find you disabled, or if you are already receiving benefits, we will stop paying you benefits.

20 C.F.R. 404.1530(a) - (b). The regulations list the following "good reason[s] for not following treatment:

> (1) The specific medical treatment is contrary to the established teaching and tenets of your religion.
>
> (2) The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.
>
> (3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.
>
> (4) The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or
>
> (5) The treatment involves amputation of an extremity, or a major part of an extremity.

20 C.F.R. 404.1530(c). Social Security Ruling 82-59 discusses "justifiable cause for failure to follow prescribed treatment" in more detail. It adds more reasons to the list set out in the above regulation, including the inability to afford treatment, which is what plaintiff is alleging in this appeal. The ruling explains:

> The individual is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable. Although a free or subsidized source of treatment is often available, the claim may be allowed when such treatment is not reasonably available in the local community. All possible resources (e.g., clinics, charitable and public assistance agencies, etc.) must be explored. Contacts with such resources and the plaintiff's financial circumstances must be documented.

S.S.R. 82-59, at 5. In <u>Gordon v. Schweiker</u>, 725 F.2d 231, 237 (4th Cir. 1984), the appellate court upheld the ruling's requirement that a plaintiff show he or she has exhausted all sources of free or subsidized treatment and document his or her financial circumstances before a plaintiff can show

good cause for failing to comply with prescribed treatment. Id.; see 20 C.F.R. § 416.930. In the end, "[a] claimant may not be penalized for failing to seek treatment she cannot afford." Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986).

In the instant case, the ALJ considered plaintiff's failure to seek back surgery in October 2012 as a factor in his determination that plaintiff's impairment was not severe. See (Tr. 18). The ALJ quoted from an interaction with a registered nurse, where plaintiff was quoted as being uninterested in further back surgery. (Tr. 18) ("…it was recommended he have surgery. He's not interested."). While the ALJ did not discuss plaintiff's purported inability to pay for further medical services, there was no evidence in the record that plaintiff had attempted to exhaust other avenues for attaining recommended surgery. The Court has read the transcript of the Administrative Hearing at which plaintiff was represented by an attorney. The attorney made no argument in the opening remarks concerning whether plaintiff had exhausted all sources of medical assistance. As to plaintiff's testimony, while he clearly stated that he had no health insurance and was "self pay" from August 2012 (when his COBRA benefits ran out) to when he first got coverage under the ACA, he went on to state that while he would have qualified for public assistance, he and his wife never sought public assistance. (T. 44). If a lack of insurance was all that was required for a claimant to justify non-compliance with treatment, there would be no need for 20 C.F.R. § 416.930.

Turning back to the evidence cited by the ALJ, his discussion at page 18 of the Administrative Record clearly supports a conclusion that plaintiff chose not to have the recommended surgery because he was "uninterested," not due to financial concerns as no mention was made of that in the contemporaneous medical records referenced by the ALJ. The evidence just was not there for the ALJ to conclude that back surgery was a procedure plaintiff was "willing

to accept" or for which "free community resources are unavailable." S.S.R. 82 59, at 5. The ALJ found that the plaintiff has had "little treatment overall." (Tr. 17).

The plaintiff asks the Court to find that there would have been more treatment if plaintiff had the opportunity to pay for it and that the ALJ penalized the plaintiff for not pursuing further treatment. The court cannot so find. Instead, the ALJ did not just rely on his conclusion of "little treatment overall," he reviewed the available record and supported his findings with substantial evidence. In the end, there simply is not evidence that would have supported a finding by the ALJ that plaintiff's lack of treatment was attributable to an inability to pay as plaintiff did not come forward with that evidence. Indeed, the evidence is antithetical to such a finding as plaintiff clearly testified "We've never signed up for any public assistance of any kind even though we could have last year, but we didn't." (T. 44). That is precisely the kind of evidence that slams the door on a § 416.930 analysis. While this Court's remand (discussed *infra*) is not based on this sub-assignment of error, it would nevertheless be appropriate for the ALJ to provide discuss the evidence as it relates to S.S.R. 82-59 and 20 C.F.R. § 416.930 in any subsequent decision.

### c. "Cherrypicking" Evidence

Plaintiff asserts that the ALJ improperly "cherry-picked" evidence from "mixed results" of a Third Party Function Report completed by plaintiff's wife. (#8-1) at 24. Specifically, plaintiff alleges that the ALJ ignored evidence which contradicted the ALJ's RFC determination.

Social Security Ruling 96-8p explains that the RFC assessment "'must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting SSR 96-8p, 61 Fed. Reg. at 34,478). "'[A] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's

ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' Id. (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)). A court must not be "left to guess" as to how the ALJ arrived at his conclusions. Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015).

In his review of plaintiff's daily activities, the ALJ noted that plaintiff is able to watch television, 'putter' in the garage, read the newspaper, use a computer, mow the lawn, water flowers, make photo albums, cook simple meals, run errands, wash dishes, socialize with friends, shop, manage money, and drive a car. (Tr. 14, 17). The ALJ cites these activities as reasons plaintiff's testimony lacked credibility, and why he afforded Dr. Brill's opinion great weight. (Tr. 17, 19). However, not discussed by the ALJ are portions of the Third Party Function Report (Tr. 193-202) which appear to conflict with the ALJ's finding. These portions received no analysis and no explanation as to the weight they were given in determination of plaintiff's RFC. These evidentiary conflicts are for the ALJ to resolve, not a reviewing court. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). While current case law instructs that this court should not search the record for evidence that would support the Commissioner's decision that was not first analyzed by the ALJ, the court highlights these examples from the Third Party Function Report for the limited purpose of demonstrating the need for further administrative review that incorporates and appropriately weighs such evidence.

- In his review of the Third Party Function Report, the ALJ did not discuss statements by plaintiff's wife that plaintiff could not sleep more than three or four hours without being awoken by foot, leg, or back pain, or from having trouble breathing. (Tr. 195).
- The ALJ did not discuss that statements that plaintiff did not shave or shower as much as he used to because his foot swelled while doing so. (Tr. 195).

- Though the ALJ found that plaintiff could mow his lawn, the ALJ did not discuss that it sometimes took plaintiff three days to accomplish this task. (Tr. 196).
- Though the ALJ noted that plaintiff is able to cook, the ALJ did not discuss that plaintiff must take breaks while cooking. (Tr. 196).
- Also undiscussed by the ALJ are statements that although plaintiff is able to walk, he often walks around because sitting and lying down to not relive his leg pain. (Tr. 197).
- While the ALJ found that plaintiff does shop, the ALJ did not discuss that plaintiff went to a convenience store if he needed milk because it was too painful for plaintiff to walk to the back of a grocery store. (Tr. 197).
- *Inter alia*, the ALJ also did not examine statements that plaintiff could not squat or kneel; that it was difficult for plaintiff to bend and reach; that back and hip pain made it difficult to put on shoes; or that standing resulted in plaintiff's feet swelling (sometimes swelling quicker than it takes to fix a cup of coffee).

As mentioned, it is not for a reviewing court to resolve evidentiary conflicts. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Without an explanation by the ALJ, the court is left to guess as to how this evidence fit into the ALJ's credibility determination of plaintiff. Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015).

### d. Perceived delay in applying for benefits

Plaintiff asserts that the ALJ improperly used plaintiff's delay of three years between the alleged onset date of September 15, 2009 and the application filing date of November 27, 2012 against him. (8-1) at 23. Specifically, plaintiff alleges that the ALJ never asked plaintiff about this delay, and that the ALJ overlooked a disclosure by the representative of the District Office that it was he who recommended that plaintiff amend his claim to September 15, 2009 from is alleged

onset date of March 15, 2011. (#8-1) at 23. Defendant argues that the use of this delay against plaintiff in the credibility determination was reasonable. Specifically, defendant argues that because plaintiff appeared to be doing well during this two-year period (i.e. plaintiff could ride a bike), it is likely that plaintiff did not get the "thought" to apply for disability until much later. (#12) at 20.

In his decision, the ALJ noted that this three year delay was "very long." (Tr. 16). The ALJ found that this "very long" delay between alleged onset of disability and filing date was "significant" in determining plaintiff's credibility. (Tr. 16-19). However, absent from the ALJ's decision is any discussion as to plaintiff's reasons for delay. Unlike the defendant in her brief, the ALJ does not speculate or make any findings as to plaintiff's state of mind during this time period. (Tr. 16). The ALJ did not ask the plaintiff about this delay in the hearing. The ALJ did not discuss the reasons why plaintiff amended their claim from March 15, 2011 to September 15, 2009. (Tr. 16). As argued by plaintiff in his brief, it is possible that plaintiff did not realize he was unable to return to gainful employment until after his unsuccessful work attempt in 2011. (#8-1) at 23. Instead of inquiring as to the reasons for the delay, the ALJ made a finding without explanation that this delay undermined plaintiff's credibility, leaving the court to guess as to why. The ALJ's finding that this delay is "significant" for the purposes of determining plaintiff's credibility is not based on substantial evidence.

## V.    Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignment of error. Review of the entire record reveals that the decision of the ALJ not supported by substantial evidence, at least in part. See Richardson v. Perales, supra; Hays v. Sullivan, supra.

Having found that there was not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra at 401, plaintiff's Motion for Summary Judgment will be granted, the Commissioner's Motion for Summary Judgment will be denied, and the decision of the Commissioner will be vacated.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) the decision of the Commissioner, denying the relief sought by plaintiff, is **VACATED;**

(2) plaintiff's Motion for Summary Judgment (#8) is **GRANTED;**

(3) the Commissioner's Motion for Summary Judgment (#11) is **DENIED;** and

(4) this action is **REMANDED** for further administrative proceedings.

Signed: August 25, 2017

Max O. Cogburn Jr
United States District Judge